**TUSCAN DAIRY FARMS, INC.,**
**Plaintiff,**

**v.**

**J. Roger BARBER, as Commissioner of Agriculture and Markets of the State of New York, Defendants.**

**No. 78 C 60.**

United States District Court,
E. D. New York.

April 24, 1978.

---

Shea, Gould, Climenko & Casey, New York City (Milton S. Gould, Michael Lesch, Kenneth A. Barry, New York City, of counsel), for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City (David L. Birch, Asst. Atty. Gen., New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a New Jersey corporation engaged in the business of processing and selling milk and milk products, brought this action against the New York Commissioner of Agriculture and Markets ("the Commissioner") on October 26, 1976, in the United States District Court for the Southern District of New York for an injunction against enforcement of Article 21 of the New York Agriculture and Markets Law ("the Milk Control Act").

Plaintiff is licensed by the New York Department of Agriculture and Markets ("the Department") to do business in Orange and Rockland Counties in New York. Having been approached by a customer to deliver milk and milk products to four supermarkets in Richmond County, plaintiff applied on May 28, 1975 to the Department for a license to do business at wholesale in that county and also in New York, Bronx, Kings and Queens Counties.

On June 26, 1975 the Department issued a notice scheduling a hearing for July 15, 1975 to consider plaintiff's application to serve wholesalers in Richmond County. Plaintiff "agreed that other counties included" in the application "would be considered at a later date."

After the hearing the Commissioner denied the license to do business in Richmond County. Acting pursuant to Section 258–c of New York's Agriculture and Markets Law, set forth in pertinent part in the margin,[1] he found that plaintiff's entry into the Richmond County market would, in the words of the statute, "tend to a destructive competition" in a market already adequately served and that such entry would not be "in the public interest."[2]

1. Section 258–c reads, in pertinent part, as follows:

"No license shall be denied to a person not now engaged in business as a milk dealer, . . . unless the commissioner finds by a preponderance of the evidence, after due notice and opportunity of hearing to the applicant or licensee, one or more of the following: (1) that the applicant is not qualified by character or experience or financial responsibility or equipment properly to conduct the proposed business, provided however, that no new application shall be denied solely for the reason of inadequate equipment if it is shown that provision has been made for the acquisition of same; (2) that the issuance of the license will tend to a destructive competition in a market already adequately served; or (3) that the issuance of the license is not in the public interest."

2. The Commissioner's conclusions were stated as follows:

"There is a substantial number of milk dealers licensed to sell and deliver milk to wholesale customers in Richmond County and such dealers are providing adequate service to the market. Ten milk dealers licensed for Richmond County are authorized to sell and distribute milk to wholesale accounts throughout the county. A number of such dealers are large-volume processors and distributors of milk who can and do compete for and serve chain supermarkets with milk in the New York Metropolitan Area. The processing plants of some such dealers are not operating at full capacity and at least one plant in the county was recently closed by a dealer because it was not operating at an economical level. One large-volume dealer was recently granted a license extension for Richmond County and has become an important factor in competing for wholesale milk customers in the market. Prices of milk charged by milk dealers to store customers in Richmond County and the prices at which such stores are retailing milk are competitive for the New York Metropolitan Area. It is clear that the market is already adequately served. The entry of another substantial processor-distributor of milk to Richmond County with primary interest in serving larger-volume supermarket accounts would under existing cir-

Plaintiff forthwith commenced proceedings in Supreme Court, Albany County, pursuant to Article 78 of the C.P.L.R., against the Commissioner, challenging his denial of the license. Plaintiff alleged, among other things, that the Milk Control Act as applied by the Commissioner "effects an unreasonable burden upon interstate commerce" in violation of the Commerce Clause of the United States Constitution.

The action was transferred to the Appellate Division, Third Department. Before that court reached a decision plaintiff brought this action under 42 U.S.C. § 1983. The complaint alleged in a first claim the Commissioner's denial of the license to serve Richmond County and asserted that his "determination" pursuant to the Milk Control Act "imposes an unlawful barrier against interstate commerce" in violation of the Commerce Clause. In a second claim plaintiff repeated the allegations of the first claim and asserted that plaintiff "desires to commence the sale of milk at wholesale to purchasers in all counties of New York State" and that the Milk Control Act, to the extent it prevents fully qualified non-New Yorkers from selling milk on the ground that competition will be adversely affected, is invalid both on its face and as applied by reason of the Commerce Clause.

Plaintiff sought a preliminary injunction, and the Commissioner answered and moved to dismiss the complaint and for a transfer to the Northern District of New York.

By order entered January 3, 1978, Judge Broderick, holding that venue was improper in the Southern District, transferred the case to this court, pursuant to 28 U.S.C. § 1406(a).

In the meantime the Appellate Division entered an order on August 18, 1977, confirming the Commissioner's determination and dismissing the Article 78 petition. *Tuscan Dairy Farms, Inc. v. Barber*, 58 A.D.2d 491, 397 N.Y.S.2d 446 (3rd Dept. 1977). The Appellate Division focussed explicitly on plaintiff's Commerce Clause contention and rejected it. Plaintiff has appealed to the New York Court of Appeals.

The Commissioner now moves to dismiss the complaint on the ground of *res judicata*. Plaintiff concedes that if the complaint had merely alleged the denial of the application to sell milk at wholesale in Richmond County the state court determination would be *res judicata*. *Ellentuck v. Klein*, 570 F.2d 414 (2d Cir. decided January 4, 1978); *Winters v. Lavine*, 574 F.2d 46 (2d Cir. decided January 16, 1978); see also *Ornstein v. Regan*, 574 F.2d 115 (2d Cir. decided April 4, 1978).

Plaintiff contends, however, that to the extent that the complaint alleges that plaintiff desires to sell milk "in all counties of New York State" the state court decision is not binding since state wide sales were not there at issue. As noted above, the complaint alleges in the second claim that the Milk Control Act is, by reason of the Commerce Clause, invalid both "on its face" and as "applied" by the Commissioner.

cumstances, tend to a destructive competition for sales of milk. It is concluded that there would be considerable pressure exerted by the applicant to establish a foothold in the market. This, along with the likelihood of competitive reaction by established dealers, would have a price-depressing effect on the market with destructive impact upon medium-size and smaller-volume milk dealers. These dealers perform an important function. The public interest requires that a balanced milk distribution structure be maintained in the market, so that service on retail home delivery routes and service to small volume wholesale customers is readily available. This type of service entails much higher unit costs than service to high volume supermarket accounts. There is an inevitable tenden-

cy for the larger milk dealers to attempt to skim the profitable supermarket accounts and neglect service to smaller volume accounts. The applicant does not perform any retail home delivery services. The public interest in maintaining a balanced milk distribution structure within Richmond County, adequate to serve all the needs of the market, would not be served by granting the application for extension.

On the basis of the record, it can not be concluded that applicant's request for extension of its milk dealer's license to Richmond County should be denied for reason of character or experience or financial responsibility or equipment properly to conduct the proposed business."

But the Milk Control Act has not been "applied" to plaintiff to prohibit sales in any county except Richmond. The only application to plaintiff has been with respect to the proposed sales in Richmond County which are the subject of the state proceeding. Plaintiff even "agreed" that its application for a license to do business in New York, Bronx, Kings and Queens Counties should be deferred to "a later date." The Commissioner thus has made no determination as to how he will apply the Milk Control Act to plaintiff as to counties other than Richmond. Plaintiff hence has shown no application to it of the Milk Control Act outside of Richmond County, and a complaint based on such application is premature.

The contention in the complaint's second claim that the Milk Control Act is invalid "on its face" under the Commerce Clause is meritless even assuming it could be litigated in this action.

While the Supreme Court, under the First Amendment as incorporated in the Fourteenth, has struck down some state statutes as unconstitutional on their face though a narrowly drawn statute could have prohibited the conduct involved, see e. g., *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), that doctrine has no bearing on cases involving the Commerce Clause.

An overbroad statute by its very existence on the books may cause people to refrain from exercising their First Amendment right to speak. However, the interest in engaging in commerce stands on a footing different from "the transcendent value" protected by the First Amendment. *Gooding v. Wilson, supra,* 405 U.S. at 521, 92 S.Ct. 1103. Moreover, no overwhelming deterrent effect is to be anticipated where a state regulatory measure purports to impose rules which a careful judicial weighing of the relevant state and federal interests later shows to be invalid under the Commerce Clause. See, e. g., *Southern Pacific Co. v. State of Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

Plaintiff's motion for a preliminary injunction is denied. Defendant's motion to dismiss is granted. So ordered.